**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

Aqua1 Alternative Investment LP,

Plaintiff,

-against-

Above Food Ingredients Inc., Jason Zhao, Lionel Kambeitz, Palm Global Technologies Limited, Muayad Kafesha, and Darren Mercer,

Defendants.

---------------------------------------------------------x

Case No.: 26-CV-7051

**COMPLAINT**

Plaintiff Aqua1 Alternative Investment LP ("Aqua1" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendants Above Food Ingredients Inc. ("Above Food"), Jason Zhao ("Zhao"), Lionel Kambeitz ("Kambeitz"), Palm Global Technologies Limited ("Palm Global"), Muayad Kafesha ("Kafesha"), and Darren Mercer ("Mercer" and together with Zhao and Kambeitz, the "Individual Defendants," and together with Above Food and Palm Global, "Defendants"), alleges as follows, upon personal knowledge as to its own acts and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1. This action arises out of Defendant Above Food's breach of a $5,000,000 Convertible Promissory Note (the "Note") issued to Aqua1 on September 3, 2025, and Defendant's related breaches of the Securities Purchase Agreement (the "Purchase Agreement") and the accompanying Side Letter (the "Side Letter," and together with the Note and the Purchase Agreement, the "Transaction Documents"), each dated as of September 3, 2025.

2. Above Food failed to repay the Note when it matured on May 31, 2026, the date on which, by the terms of the Note, the entire outstanding principal and interest became due because the "Palm Global Reverse Merger" had not been consummated. Above Food has not cured this default, has failed to honor its information-rights and governance-rights obligations

under the Side Letter, was delisted from the Nasdaq Capital Market on June 1, 2026 for failure to timely file audited financial statements and its Annual Report on Form 20-F, and has failed to comply with its ongoing reporting obligations under the Securities Exchange Act of 1934 (the "Exchange Act") — each of which independently constitutes an Event of Default under the Note.

3. Despite formal written default notices sent on June 5, 2026 and July 13, 2026, and despite the accrual of default interest at the contractual rate of 16% per annum, Above Food has refused to repay any portion of the amount due and has disputed its payment obligations on grounds that are contradicted by the plain language of the Transaction Documents and by Above Food's own conduct.

4. Aqua1 further alleges that it was induced to purchase the Note based on material representations and warranties made by Above Food in the Purchase Agreement concerning, among other things, its compliance with SEC reporting obligations, the absence of undisclosed material adverse facts, and its solvency — representations that proved materially false, in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

5. Aqua1 also brings this action against Defendant Jason Zhao, Above Food's Chief Financial Officer, who personally made, and/or was substantially responsible for, materially false and misleading statements and omissions to Aqua1 and its representatives — including a false representation that the asset roll-in central to Above Food's funding requests had "already happened," and the concealment of the timing of the Palm Global Reverse Merger and the fact that the substantial majority of Aqua1's investment proceeds had been diverted to Palm Global — in violation of Section 10(b) of the Exchange Act and Rule 10b-5, and under the common law of fraud.

6. Aqua1 further brings this action against Defendant Palm Global Technologies Limited ("Palm Global"), which absolutely, unconditionally, and irrevocably guaranteed to Aqua1, pursuant to a Guaranty dated September 3, 2025 (the "Guaranty"), the full and punctual payment and performance of Above Food's obligations under the Note, the Purchase Agreement, and the other Transaction Documents. Aqua1 brings this action against Palm Global for breach of the Guaranty and for fraud arising from Palm Global's receipt and retention of the substantial

majority of the proceeds of Aqua1's $5,000,000 investment without Aqua1's knowledge or consent, and Palm Global's active role in directing Above Food to withhold from Aqua1 the very information to which Aqua1 was contractually entitled.

7. Aqua1 further brings this action against Defendant Lionel Kambeitz, Above Food's Chief Executive Officer, who has ultimate authority over Above Food's management, finance function, disclosure practices, and investor communications and is liable, together with Above Food and Zhao, under Section 10(b) of the Exchange Act and Rule 10b-5 and under the common law of fraud, for knowingly or recklessly permitting and culpably participating in Above Food's material misrepresentations and omissions to Aqua1, including the omission of the fact that Palm Global had received and retained the substantial majority of Aqua1's investment proceeds, the timing of the Palm Global Reverse Merger, and withholding material information from Aqua1. Kambeitz is also liable as a control person of Above Food under Section 20(a) of the Exchange Act.

8. Aqua1 further brings this action against Defendant Muayad Kafesha, President of Palm Global, who has ultimate authority over Palm Global's business and decision-making and is liable, together with Palm Global, under Section 10(b) of the Exchange Act and Rule 10b-5 and under the common law of fraud, for knowingly or recklessly authorizing or acquiescing in Palm Global's receipt and retention of the substantial majority of Aqua1's investment proceeds and in Palm Global's direction that information regarding that diversion be withheld from Aqua1. Kafesha is also liable as a control person of Palm Global under Section 20(a) of the Exchange Act.

9. Aqua1 further brings this action against Defendant Darren Mercer, a founding shareholder and director of Palm Global and, at all relevant times, Palm Global's principal point of contact with Above Food concerning the matters described herein, who, as the founding shareholder, director, and his role as Palm Global's de facto information gatekeeper, is liable, together with Palm Global, under Section 10(b) of the Exchange Act and Rule 10b-5 and under the common law of fraud, for directing, or participating in the decision to direct, that material information regarding the use of Aqua1's investment proceeds and the status of the Palm Global Reverse Merger be withheld from Aqua1. Mercer is also liable as a control person of Palm Global under Section 20(a) of the Exchange Act.

10. Aqua1 brings this action to recover the full amount due and owing under the Note, together with contractual default interest, the contractual 115% acceleration premium, attorneys' fees and costs of collection, and damages arising from the Individual Defendants' violations of the federal securities laws, Above Food's breach of the Transaction Documents, Palm Global's breach of Guaranty, and Defendants' fraud.

## PARTIES

11. Plaintiff Aqua1 Alternative Investment LP is a limited partnership organized under the laws of the British Virgin Islands, acting by its general partner Aqua1 GP Limited, with its registered office at ICS Corporate Services (BVI) Limited, Sea Meadow House, P.O. Box 116, Road Town, Tortola, British Virgin Islands.

12. Defendant Above Food Ingredients Inc. is a corporation organized under the laws of the Province of Alberta, Canada, with its headquarters located at 2305 Victoria Avenue #002, Regina, Saskatchewan, S4P 0S7, Canada. At all relevant times, Above Food's common shares were listed for trading on the Nasdaq Capital Market and Above Food was subject to the reporting requirements of the Exchange Act, including the obligation to file an Annual Report on Form 20-F as a foreign private issuer. Above Food was delisted from Nasdaq due to failing to file its required audited financial statements and Form 20-F.

13. Defendant Jason Zhao is, upon information and belief, a natural person who at all relevant times served as Chief Financial Officer of Above Food and resided in or near Regina, Saskatchewan, Canada. At all relevant times, Zhao acted as Above Food's principal point of contact with Aqua1 concerning the matters described herein, and, in that capacity and in his individual capacity, made the representations, communications, and omissions described below, including representations made in connection with the diligence that preceded the Purchase Agreement and representations made after the Note's issuance concerning the status of the asset roll-in, the Palm Global Reverse Merger, and the use of Aqua1's investment proceeds.

14. Defendant Lionel Kambeitz is, upon information and belief, a natural person who at all relevant times served as Chief Executive Officer of Above Food. At all relevant times, Kambeitz, as Above Food's most senior executive officer, exercised ultimate authority and control over Above Food's business, financial condition, disclosure practices, and the

representations made to Aqua1 in connection with the Transaction Documents, including the representations and warranties described in Section E below and the statements and omissions of Zhao described in Section H below.

15. Defendant Palm Global Technologies Limited is a company incorporated under the laws of the United Kingdom. Palm Global is the Guarantor under the Guaranty described in Section B below, pursuant to which it absolutely, unconditionally, and irrevocably, jointly and severally, guaranteed to Aqua1 the payment and performance of Above Food's "Obligations" (as defined in the Guaranty) under the Purchase Agreement and the Notes. Palm Global is also the counterparty to the business combination with Above Food, effective July 7, 2025, referred to elsewhere in the Transaction Documents as the "Palm Global Reverse Merger." (or the "Reverse Merger")

16. Defendant Muayad Kafesha is, upon information and belief, a natural person who at all relevant times served as President of Palm Global. At all relevant times, Kafesha, as Palm Global's President, exercised authority and control over Palm Global's business and decision-making, including Palm Global's receipt and retention of the substantial majority of Aqua1's investment proceeds and Palm Global's direction that information regarding that diversion and the status of the Reverse Merger be withheld from Aqua1, as described in Section I below.

17. Defendant Darren Mercer is, upon information and belief, a natural person who is a founding shareholder and director of Palm Global. At all relevant times, Mercer served as Palm Global's principal point of contact with Above Food concerning the matters described herein and functioned as Palm Global's de facto gatekeeper for information flowing to Aqua1, directing what information Above Food was and was not permitted to disclose to Aqua1 regarding the use of Aqua1's investment proceeds and the status of the Reverse Merger, as described in Section I below.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over Plaintiff's federal securities law claims against Defendants Above Food, Zhao, Kambeitz, Palm Global, Kafesha, and Mercer pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331, as those claims arise under the laws of the United States.

19. This Court has supplemental jurisdiction over Plaintiff's breach of contract claim against Above Food and Palm Global pursuant to 28 U.S.C. § 1367(a), as it arises from the same transactions and occurrences as Plaintiff's federal securities law claims and forms part of the same case or controversy.

20. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's claim against Defendants Above Food, Zhao, Kambeitz, Palm Global, Kafesha, and Mercer for common law fraud, because that claim arises from a common nucleus of operative fact and forms part of the same case or controversy as Plaintiff's federal securities law claims against those Defendants, such that it would ordinarily be expected to be tried in one judicial proceeding. As set forth below, this Court independently has jurisdiction over Plaintiff's claim against Above Food for breach of the Transaction Documents and against Palm Global for breach of the Guaranty by virtue of their express contractual consent.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and pursuant to the forum-selection provisions contained in the Note and the Purchase Agreement, each of which provides that any action arising out of or relating to the Transaction Documents shall be brought in the state courts of New York or in the federal courts located in the District of the State of New York, and pursuant to which Above Food irrevocably waived any objection to venue and consented to jurisdiction in such courts. Venue is further proper as to Palm Global pursuant to Section 12 of the Guaranty, in which Palm Global consented to suit in the courts of the State of New York sitting in the Borough of Manhattan, or any federal court for the Southern District of New York, and waived any objection to venue in such courts. Venue is also proper as to Defendants Zhao, Kambeitz, Kafesha, and Mercer pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events and omissions giving rise to Plaintiff's claims against them — including the making of, or culpable participation in, the representations and omissions described herein — was directed to, and had its intended effect upon, Plaintiff and its representatives in connection with a transaction that the parties agreed would be governed by, and litigated in, this District.

22. This Court has personal jurisdiction over Above Food because Above Food contractually consented to the jurisdiction of the state and federal courts located in the State of

New York under Section 4.6 of the Note and Section 7(a) of the Purchase Agreement, and irrevocably waived any objection based on lack of jurisdiction, venue, or forum non conveniens.

23. This Court has personal jurisdiction over Defendant Palm Global because Palm Global expressly consented to the nonexclusive jurisdiction of the state and federal courts located in the Borough of Manhattan under Section 12 of the Guaranty, and irrevocably waived any objection to venue in such courts.

24. This Court also has personal jurisdiction over Defendant Zhao because Zhao, upon information and belief, purposefully directed representations, communications, and omissions to Aqua1 and its representatives in connection with, and for the purpose of inducing and maintaining, a transaction that Zhao, as Above Food's Chief Financial Officer and signatory, knew was governed by the Transaction Documents consenting to jurisdiction and venue in New York, thereby transacting business within the State of New York and/or committing tortious acts causing injury within the State of New York, within the meaning of N.Y. C.P.L.R. § 302(a). Zhao, as an officer and agent of Above Food acting within the scope of his authority and in furtherance of the conduct alleged herein, is subject to this Court's jurisdiction on the same basis as Above Food.

25. This Court also has personal jurisdiction over Defendant Kambeitz because Kambeitz, as Above Food's Chief Executive Officer, exercised ultimate authority over, and knowingly or recklessly permitted, the representations, communications, and omissions made by Above Food and Zhao to Aqua1 and its representatives in connection with, and for the purpose of inducing and maintaining, a transaction that Kambeitz knew was governed by the Transaction Documents consenting to jurisdiction and venue in New York, thereby transacting business within the State of New York and/or committing tortious acts causing injury within the State of New York, within the meaning of N.Y. C.P.L.R. § 302(a). Kambeitz, as an officer of Above Food acting within the scope of his authority and in furtherance of the conduct alleged herein, is subject to this Court's jurisdiction on the same basis as Above Food.

26. This Court also has personal jurisdiction over Defendant Kafesha because Kafesha, as President of Palm Global, exercised authority over, and knowingly or recklessly permitted, Palm Global's receipt and retention of Aqua1's investment proceeds and Palm Global's

direction that information be withheld from Aqua1, conduct purposefully directed at Aqua1 and its representatives in connection with a transaction that Kafesha knew was governed by the Guaranty consenting to jurisdiction and venue in New York, thereby transacting business within the State of New York and/or committing tortious acts causing injury within the State of New York, within the meaning of N.Y. C.P.L.R. § 302(a). Kafesha, as an officer of Palm Global acting within the scope of his authority and in furtherance of the conduct alleged herein, is subject to this Court's jurisdiction on the same basis as Palm Global.

27. This Court also has personal jurisdiction over Defendant Mercer because Mercer, as a director and founding shareholder of Palm Global and Palm Global's principal point of contact with Above Food, purposefully directed the withholding of information from Aqua1 and its representatives in connection with, and for the purpose of maintaining, a transaction that Mercer knew was governed by the Guaranty consenting to jurisdiction and venue in New York, thereby transacting business within the State of New York and/or committing tortious acts causing injury within the State of New York, within the meaning of N.Y. C.P.L.R. § 302(a). Mercer, as a director and agent of Palm Global acting within the scope of his authority and in furtherance of the conduct alleged herein, is subject to this Court's jurisdiction on the same basis as Palm Global.

28. The Guaranty is governed by, and shall be construed in accordance with, the laws of the State of Nevada, pursuant to Section 12 of the Guaranty. Plaintiff's Eighth Cause of Action, for breach of the Guaranty, is accordingly pled under Nevada law; jurisdiction and venue in this Court are independently proper as alleged above.

## **FACTUAL ALLEGATIONS**

### A. The Transaction Documents

29. On or about September 3, 2025, Aqua1 and Above Food entered into the Purchase Agreement, pursuant to which Above Food agreed to sell, and Aqua1 agreed to purchase, a convertible promissory note in the principal amount of $5,000,000, as the first tranche of a contemplated $20,000,000 note program to be issued in up to three tranches (First Notes, Second Notes, and Third Notes).

30. Contemporaneously, Above Food executed and delivered to Aqua1 the Note, dated September 3, 2025, evidencing Above Food's unconditional promise to repay the $5,000,000 principal amount, together with interest at 6% per annum, and the parties executed the Side Letter, dated September 3, 2025, which the Side Letter itself states was entered into "as a material inducement to the Investor's purchase of such Notes."

31. Section 3(c) of the Side Letter expressly states that "completion of Palm Global Reverse Merger is a key inducement of the Investor's investment," and that Above Food "covenants and agrees to use its best efforts to consummate the Palm Global Reverse Merger on a timely basis."

**B. The Palm Global Guaranty**

32. Contemporaneously with the execution of the Purchase Agreement and the Note on September 3, 2025, Defendant Palm Global executed and delivered to Aqua1 a Guaranty, dated as of September 3, 2025, pursuant to which Palm Global, described therein as the "Guarantor," absolutely, unconditionally, and irrevocably, jointly and severally, guaranteed to Aqua1 the full and punctual payment and performance of all "Obligations" of Above Food, defined in the Guaranty to include, among other things, all debts, liabilities, and obligations owed by Above Food to Aqua1 under or in connection with the Notes, the Purchase Agreement, and the other Transaction Documents.

33. The Guaranty states that it was executed in connection with a definitive business combination agreement, effective July 7, 2025, between Above Food and Palm Global (referred in the Transaction Documents as the "Palm Global Reverse Merger"), pursuant to which Above Food and Palm Global agreed to combine through a statutory plan of arrangement under the laws of the Province of Alberta, and that Palm Global "expects to receive substantial direct and indirect benefits from the transactions contemplated by the [Purchase Agreement] and the Notes (including, without limitation, the extensions of credit to [Above Food] by [Aqua1] ...) (which benefits are hereby acknowledged)."

34. The Guaranty further states that Palm Global's execution and delivery of the Guaranty was "a condition precedent to [Aqua1's] willingness to enter into the [Purchase Agreement] and the Notes and make the loans to [Above Food] thereunder."

35. Section 2 of the Guaranty provides that the Guaranty "is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance of all of the obligations and not of their collectibility only," and is "in no way conditioned upon any requirement that [Aqua1] first attempt to collect any of the Obligations from [Above Food] ... or resort to any collateral security or other means of obtaining payment." Section 2 further provides that, should Above Food "default in the payment or performance of any of the Obligations," Palm Global's "joint and several obligations ... with respect to such Obligations in default shall, upon demand by [Aqua1], become immediately due and payable to [Aqua1], without demand or notice of any nature, all of which are expressly waived" by Palm Global.

36. Section 3 of the Guaranty separately obligates Palm Global, "as the principal obligor and not as a guarantor only," to pay Aqua1, on demand, all out-of-pocket costs and expenses, including court costs and legal expenses, incurred by Aqua1 in connection with the obligations, the Guaranty, and the enforcement thereof.

37. Section 5 of the Guaranty provides that the Guaranty remains binding on Palm Global "to the same extent as if [Palm Global] at all times had been the principal obligor on all such Obligations," regardless of any defect in, or defense to, the enforceability of the obligations against Above Food.

38. Section 12 of the Guaranty provides that Palm Global "agrees that any suit for the enforcement of this Guaranty may be brought in the courts of the State of New York sitting in the Borough of Manhattan or ... any federal court for the Southern District of New York," consents to the nonexclusive jurisdiction of such courts, and "waives any objection that it may now or hereafter have to the venue of any such suit."

**C. The Note's Maturity and Repayment Terms**

39. The Note provides that Above Food "promises to pay to the order of" Aqua1 the sum of $5,000,000, together with interest, "on (i) twenty-four (24) months following the Issue Date; (ii) May 31, 2026, if the Palm Global Reverse Merger has not been consummated by such date (the 'Maturity Date')."

40. The only reasonable construction of this provision — and the construction consistent with the Side Letter's express recognition that the Palm Global Reverse Merger was a "key inducement" of Aqua1's investment — is that repayment of the Note is due upon the earlier to occur of (i) the date twenty-four months after the Issue Date, or (ii) May 31, 2026, if the Palm Global Reverse Merger has not been consummated by that date. Any construction that reads the second, contingency-based trigger out of the Note entirely would render that bargained-for term meaningless and is disfavored under well-established principles of contract construction.

41. The Note further provides for interest at 6% per annum through the date payment becomes due, and for "Default Interest" of 16% per annum on any principal or interest not paid when due, from the due date until paid.

42. Article III of the Note lists the Events of Default, including, as relevant here: (i) Section 3.1, failure to pay principal or interest when due; (ii) Section 3.4, breach of any material covenant or term contained in the Note or any collateral document, including the Purchase Agreement or the Side Letter; (iii) Section 3.5, breach of any representation or warranty made in the Note or any related agreement, including the Purchase Agreement; (iv) Section 3.9, failure to maintain the listing of the common shares on the Trading Market; and (v) Section 3.10, failure to comply with the reporting requirements of the Exchange Act.

43. Upon the occurrence of an Event of Default specified in Sections 3.1, 3.4, 3.5, 3.9 or 3.10, the Note provides that the Holder (here Aqua1) may declare the Note immediately due and payable, and that the Borrower (here Above Food) must pay, within thirty calendar days of a default notice, an amount equal to 115% of the sum of the outstanding principal, accrued and unpaid interest, and default interest (the "Default Amount").

44. Article III of the Note further provides that if the Holder (here Plaintiff) commences an action to enforce the Note and prevails, the Holder shall be reimbursed by the Borrower (here Defendant Above Food) for its attorneys' fees and other costs and expenses incurred in the investigation, preparation, and prosecution of the action.

**D. The Side Letter's Information and Governance Rights**

45. Under Section 2 of the Side Letter, Above Food agreed, among other things, to: (a) provide Aqua1, upon request, updated capitalization information; (b) notify Aqua1 of any issuance of additional shares or convertible securities and any amendment to the capitalization table; (c) provide Aqua1 information regarding Above Food's use of the Purchase Price proceeds on a monthly basis or upon request; (d) permit Aqua1 to inspect Above Food's books and accounts and discuss its business and operations with its officers and directors; and (e) notify Aqua1 of any investigation, litigation, or other legal or regulatory proceeding pending or threatened against Above Food.

46. Section 4 of the Side Letter further granted Aqua1 the right to nominate one director to Above Food's board (the "Investor Director"), and obligated Above Food to "take all actions to appoint the Investor Director."

47. On or about May 11, 2026, a representative of Aqua1 sent a written request to Above Food's Chief Financial Officer, Jason Zhao, demanding that Above Food provide the information to which Aqua1 was entitled under the Side Letter and appoint Aqua1's director nominee. Above Food failed to substantively respond, has provided only incomplete information, and to date has not appointed Aqua1's Investor Director, in breach of Sections 2 and 4 of the Side Letter.

**E. Above Food's Representations and Warranties in the Purchase Agreement**

48. In Section 3 of the Purchase Agreement, Above Food represented and warranted to Aqua1, as a material inducement to Aqua1's purchase of the Note, that: (a) it had timely filed all reports required under the Exchange Act and that none of its SEC filings contained any untrue statement of material fact or omitted to state a material fact necessary to make the statements made, in light of the circumstances in which they were made, not misleading (Section 3(g)); (b) there was no material adverse change in its business, assets, liabilities, or 1934 Act reporting status since January 31, 2024, except as disclosed on the applicable schedule (Section 3(h)); (c) it was, after giving effect to the transaction, solvent, with no information that would lead it to conclude otherwise (Section 3(w)); and (d) it was not in violation of the listing requirements of the Nasdaq Capital Market or the other exchanges enumerated therein, except as disclosed on Schedule 3(f) (Section 3(f)).

49. These representations and warranties were made as of the Effective Date of the Purchase Agreement, September 3, 2025, and were incorporated by reference into, and reaffirmed as of the Issue Date of, the Note, in which Above Food affirmatively represented that it had "performed, satisfied and complied in all material respects with all the covenants, agreements and conditions" of the Transaction Documents, that no Event of Default had occurred, and that no fact, event, or circumstance had occurred that could reasonably be expected to result in a Material Adverse Effect.

50. These representations were materially false and misleading when made, or Above Food recklessly disregarded facts rendering them false and misleading, in that, upon information and belief, Above Food was not, at the time such representations were made, in a position to timely file its audited financial statements and Annual Report on Form 20-F, was not in compliance with Nasdaq's continued listing requirements, and did not disclose these facts to Aqua1 prior to or contemporaneously with Aqua1's funding of the Note, in violation of Above Food's disclosure obligations under Section 3(n) of the Purchase Agreement.

**F. Above Food's Failure to Pay at Maturity and Subsequent Defaults**

51. The Palm Global Reverse Merger was not consummated by May 31, 2026. Accordingly, under the plain terms of the Note, the Maturity Date of the Note occurred on May 31, 2026, and the full outstanding principal of $5,000,000, together with 6% accrued interest, became immediately due and payable on that date.

52. Above Food failed to pay any portion of the principal or interest due on May 31, 2026, and has not made any payment on the Note to date.

53. On June 1, 2026, the Nasdaq Stock Market delisted Above Food's common shares for failure to timely file its audited financial statements and its Annual Report on Form 20-F, triggering additional, independent Events of Default under Sections 3.9 (delisting) and 3.10 (failure to comply with the Exchange Act) of the Note.

54. As a result of the foregoing, Above Food is, and at all relevant times since May 31, 2026 has been, in default under at least Sections 3.1, 3.4, 3.5, 3.9, and 3.10 of the Note.

**G. Aqua1's Demand Notices and Above Food's Refusal to Pay**

55. By letter dated June 5, 2026, Aqua1, through counsel, issued a formal default notice to Above Food pursuant to Article III of the Note, identifying each of the foregoing Events of Default and demanding, as a good-faith accommodation, payment of $5,250,000 (representing principal plus accrued interest, without the contractual 115% acceleration premium) by no later than July 6, 2026.

56. By letter dated June 15, 2026, Above Food responded, disputing that any payment was presently due on the ground that the Note's maturity provision was purportedly "ambiguous" and asserting that repayment was not due until twenty-four months after the Issue Date (i.e., September 2027). Above Food further asserted that Aqua1's information and director-nomination rights under the Side Letter had not "crystallized" because Aqua1 had not purchased the full $20,000,000 contemplated under the note program. Above Food did not address or dispute the Nasdaq delisting or Exchange Act reporting defaults identified in the June 5, 2026 default notice.

57. By letter dated July 13, 2026, Aqua1, through counsel, rejected each of Above Food's positions as contrary to the plain language of the Transaction Documents, reissued its demand for immediate payment, calculated the amount then due under the Note's 115% acceleration premium to be $6,148,656.16, and, as a final good-faith accommodation, offered to accept $5,346,657.53 if paid in full by July 27, 2026. Aqua1 further warned that litigation would follow absent payment or a binding written payment arrangement by that date.

58. Above Food failed to pay any amount by July 27, 2026, has not proposed or agreed to any payment arrangement, and remains in default. Default interest at 16% per annum continues to accrue on the unpaid balance of $5,221,917.81 (comprised of the $5,000,000 principal and $221,917.81 of accrued interest from September through May 31, 2026) at a daily rate of $2,289.06. The 115% acceleration premium applicable to the unpaid balance of $5,221,917.81 plus the daily rate of $2,289.06 accrues from June 1, 2026 also accrues daily. Based on this calculation, the total amount due as of the date of this filing exceeds $6,189,000, exclusive of attorneys' fees and costs, and continues to grow each day that Above Food remains in default.

**H. Defendant Zhao's Individual Misrepresentations and Omissions**

59. On or about December 24, 2025, Zhao sent a written communication to Aqua1's representatives requesting the funding of a further $10,000,000 (or the second tranche) under the parties' note program, stating that "[a]s per our investment agreement, tranche 2 funding ... is to occur after the assets have been formally rolled in," and representing that "this has already happened a few days ago."

60. Zhao's representation that the asset roll-in had "already happened" was, at the time it was made, false or made without a reasonable basis for believing it to be true. Within days, on December 30, 2025, Aqua1's representative requested that Above Food "provide documentary evidence confirming that the assets have been formally rolled in as described," and on February 3, 2026 — more than five weeks after Zhao's representation — Aqua1 again advised that it had "not yet received the requested documentation regarding the asset roll-in." By March 7, 2026, Aqua1's representative advised that there had been "zero communication from the company" on the subject. Above Food never provided the documentary evidence of asset injection that Zhao had represented, as of December 24, 2025, already existed.

61. On or about August 24, 2025, in advance of Aqua1's decision to fund the Note, Zhao provided Aqua1 with due diligence materials representing that Above Food's restructuring had "allowed the business to eliminate all corporate debt," that the business had achieved $1.5 million of net income and $3.6 million of EBITDA for the preceding six-month period, and that the restructuring had eliminated "all banking debt at the corporate level." These representations were material to, and were reasonably relied upon by, Aqua1 in deciding to invest.

62. Zhao's August 24, 2025 representations omitted to disclose, and Zhao did not thereafter disclose until directly and repeatedly pressed by Aqua1's representative on a call on June 4, 2026, that Above Food intended to, and did, divert the substantial majority of Aqua1's $5,000,000 investment to Defendant Palm Global, retaining for Above Food's own operations only approximately $750,000 of the $5,000,000 invested. This fact was plainly material to Above Food's represented solvency, use of proceeds, and debt position, and its omission rendered Zhao's and Above Food's prior representations materially misleading.

63. During the June 4, 2026 call, Zhao admitted that the allocation of the majority of Aqua1's investment to Palm Global was made pursuant to what he described as "a collective

decision" involving Palm Global, made without Aqua1's knowledge or consent, and never disclosed to Aqua1 in the monthly use-of-proceeds reporting to which Aqua1 was entitled under Section 2(c) of the Side Letter. Zhao also stated that "Palm wants to be the gatekeeper for information going to you," confirming that Above Food, at Palm Global's direction, had been withholding from Aqua1 information to which Aqua1 was contractually entitled.

64. Also during the June 4, 2026 call, Zhao gave evasive or non-responsive answers when asked about the date on which Above Food received formal notice of its Nasdaq listing deficiency, the status of Aqua1's right to appoint an Investor Director, and whether Above Food could provide Palm Global's financial statements, responding variously that he did not know, would have to check, and was not sure whether he could send them.

65. Zhao's statements and omissions described above were material because a reasonable investor in Aqua1's position would have considered it significant that Above Food, the issuer of the Note, retained only a small fraction of the proceeds of Aqua1's investment, with the remainder diverted to an unlisted merger counterparty over which Aqua1 had no visibility or control, particularly where the Side Letter expressly entitled Aqua1 to monthly use-of-proceeds reporting and inspection rights, and where the timely completion of the asset roll-in was a condition to further funding.

66. Zhao made these representations and omissions knowingly, or with reckless disregard for their truth or falsity, given his position as Above Food's Chief Financial Officer with direct and superior knowledge of the company's receipt and allocation of Aqua1's investment proceeds, the status of the asset roll-in, and the status of the Palm Global Reverse Merger, as reflected in his own admissions during the June 4, 2026 call.

**I. Palm Global's Receipt of Investment Proceeds and Role in the Scheme**

67. As described above, the Side Letter expressly recites that completion of the Palm Global Reverse Merger was "a key inducement of [Aqua1's] investment," and Above Food covenanted to use its best efforts to consummate that merger. Aqua1 funded the Note and continued to hold the Note without declaring an earlier default, in substantial part based on the expectation that the Palm Global Reverse Merger would be completed on the timeline represented by Above Food and, upon information and belief, by Palm Global.

68. According to Zhao's own admission during the June 4, 2026 call, Palm Global received and retained approximately 85% of the proceeds of Aqua1's $5,000,000 investment, purportedly to fund infrastructure and organizational development for Palm Global's own benefit, notwithstanding that those funds were advanced by Aqua1 to Above Food, and not to Palm Global, under the Note.

69. Zhao further stated that under “the agreement [Aqua1] signed,” if Aqua1 wanted its funds returned, Aqua1 can get it back from Palm. Plaintiff is informed and believes, and on that basis alleges, that Zhao's statement referred to the Guaranty described in Section B above, pursuant to which Palm Global absolutely, unconditionally, and irrevocably guaranteed to Aqua1 the payment and performance of Above Food's obligations under the Note.

70. Palm Global exercised de facto control over the information provided to Aqua1 and withheld such information from Aqua1. Zhao advised Aqua1 that “Palm wants to be the gatekeeper for information” flowing to Aqua1. This statement reflects Palm Global's active involvement in, and influence over, the representations made to, and information withheld from, Aqua1.

71. Palm Global's receipt and retention of the substantial majority of Aqua1's investment, its direction that information be withheld from Aqua1, and Above Food's contemporaneous representations regarding the use of proceeds and the status of the asset roll-in and Reverse Merger, reflect a coordinated course of conduct between Above Food, Zhao, and Palm Global to induce and retain Aqua1's investment while concealing the true use and disposition of the invested funds, notwithstanding Palm Global's own undertaking, as Guarantor under the Guaranty, to ensure the full and punctual payment of Above Food's obligations to Aqua1.

72. Aqua1 has demanded, including in its May 11, 2026 and June 5, 2026 written demands, that Above Food provide documentation regarding the Palm Global Reverse Merger and Above Food's use of proceeds. Above Food has failed to provide that documentation, and, upon information and belief, Palm Global has directed or acquiesced in that failure notwithstanding Palm Global's knowledge that Aqua1 was contractually entitled to that information.

**J. Kambeitz, Kafesha, and Mercer's Control Over, and Participation in, the Scheme**

73. As Above Food's Chief Executive Officer, Kambeitz exercised ultimate authority over Above Food's management, financial reporting, and public disclosures, including the representations and warranties made to Aqua1 in the Purchase Agreement described in Section E above and the representations and omissions made by Zhao described in Section H above. Upon information and belief, Kambeitz knew, or recklessly disregarded, that Above Food was not in a position to timely file its audited financial statements and Annual Report on Form 20-F, was at risk of Nasdaq delisting, and had diverted the substantial majority of Aqua1's investment proceeds to Palm Global, and could not complete the Reverse Merger with Palm Global. Kambeitz nonetheless permitted Above Food to represent otherwise to Aqua1 and to omit these material facts from its disclosures to Aqua1.

74. Upon information and belief, Kambeitz, by virtue of his position as Chief Executive Officer, possessed the power to control, and did control, the content of the representations, warranties, and disclosures made by Above Food and Zhao to Aqua1, and exercised that control, or culpably failed to exercise it, notwithstanding his knowledge of the true facts concerning Above Food's financial condition, reporting status, and use of Aqua1's investment proceeds.

75. As President of Palm Global, Kafesha exercised authority over Palm Global's business decisions, including Palm Global's receipt and retention of approximately 85% of the proceeds of Aqua1's $5,000,000 investment, as described in Section I above. Upon information and belief, Kafesha knew, or recklessly disregarded, that those proceeds were advanced by Aqua1 to Above Food and not to Palm Global, that Aqua1 had not consented to their diversion, and that Above Food was contractually obligated to report the use of those proceeds to Aqua1. Kafesha nonetheless authorized or acquiesced in Palm Global's receipt and retention of the funds and in the withholding of information regarding that diversion from Aqua1.

76. Upon information and belief, Kafesha, by virtue of his position as President, possessed the power to control, and did control, Palm Global's decision to receive and retain Aqua1's investment proceeds and Palm Global's decision to direct that information regarding that

diversion be withheld from Aqua1, and exercised that control, or culpably failed to exercise it, notwithstanding his knowledge of the true facts.

77. Mercer is a founding shareholder and director of Palm Global and, at all relevant times, served as Palm Global's principal point of contact with Above Food concerning the Reverse Merger, the Transaction Documents, and Aqua1's investment. Upon information and belief, Mercer directed, or participated in the decision to direct, that Above Food withhold from Aqua1 the information to which Aqua1 was contractually entitled under Section 2(c) of the Side Letter regarding the use of Aqua1's investment proceeds and the status of the Reverse Merger. Zhao's statement to Aqua1's representatives that "Palm wants to be the gatekeeper for information" flowing to Aqua1, as described in Section I above, reflects the role that Mercer, as Palm Global's principal point of contact with Above Food, occupied in directing and controlling the flow — and withholding — of information to Aqua1.

78. Upon information and belief, Mercer, by virtue of his position as a director and founding shareholder of Palm Global and his role as Palm Global's principal point of contact with Above Food, possessed the power to control, and did control, the information that Above Food was permitted to disclose to Aqua1 concerning the use of Aqua1's investment proceeds and the status of the Reverse Merger, and exercised that control to cause material information to be withheld from Aqua1.

79. The conduct of Kambeitz, Kafesha, and Mercer described above was part of the same coordinated course of conduct among Above Food, Zhao, Palm Global, Kambeitz, Kafesha, and Mercer described in Section I above, by which Aqua1 was induced to fund and continue to hold the Note while the true use and disposition of its investment proceeds, and the true status of the Reverse Merger, were concealed from it.

**FIRST CAUSE OF ACTION**

**(Breach of Contract — The Note and the Side Letter, Against Above Food)**

80. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

81. The Note and the Side Letter are each valid and binding contracts between Aqua1 and Above Food, supported by adequate consideration, namely Aqua1's payment of the $5,000,000 Purchase Price.

82. Aqua1 has performed all of its obligations under the Note and the Side Letter, including funding the full Purchase Price of the Note.

83. Above Food breached the Note by (a) failing to pay the outstanding principal and accrued interest due on the Maturity Date of May 31, 2026; (b) failing to pay the Default Amount demanded in Aqua1's June 5, 2026 and July 13, 2026 default notices; and (c) allowing multiple, independent Events of Default to occur and remain uncured under Sections 3.1, 3.4, 3.5, 3.9, and 3.10 of the Note.

84. Above Food separately breached the Side Letter by (a) failing to provide the information to which Aqua1 was entitled under Section 2 of the Side Letter following Aqua1's May 11, 2026 request and thereafter, including information regarding the use of Aqua1's investment proceeds; and (b) failing to appoint Aqua1's Investor Director nominee as required by Section 4 of the Side Letter.

85. As a direct and proximate result of Above Food's breaches, Aqua1 has been damaged in an amount to be proven at trial, but not less than $6,190,000, consisting of the $5,000,000 principal amount of the Note, 6% interest accrued from September 3, 2025 through May 31, 2026, 16% default interest accruing on the resulting balance from June 1, 2026 through the date of judgment, and the contractual 115% acceleration premium provided for in Article III of the Note, plus continuing daily accrual of default interest until payment in full.

86. Pursuant to Article III and Section 4.5 of the Note, Aqua1 is further entitled to recover its reasonable attorneys' fees and other costs of collection incurred in connection with the investigation, preparation, and prosecution of this action.

**SECOND CAUSE OF ACTION**

**(Violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5, Against Above Food)**

87. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

88. The Note constitutes a "security" within the meaning of Section 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10), and Above Food's issuance and sale of the Note to Aqua1, and Aqua1's purchase thereof, were transactions "in connection with the purchase or sale" of a security within the meaning of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

89. In the Purchase Agreement, Above Food represented and warranted to Aqua1, as a material inducement to Aqua1's purchase of the Note, that it had timely filed all reports required under the Exchange Act, that none of its SEC filings contained any untrue statement of material fact or omitted a material fact necessary to make the statements made not misleading, that there had been no undisclosed material adverse change in its business or 1934 Act reporting status, and that it was solvent and not in violation of applicable Nasdaq listing requirements except as specifically disclosed.

90. In the Side Letter, Above Food agreed to use its best efforts to "consummate the Palm Global Reverse Merger on a timely basis" and further agreed to update the status of the Reverse Merger to Aqua1 from time to time.

91. These representations were materially false and misleading, or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, in that Above Food failed to disclose that it was unable to timely file its audited financial statements and Annual Report on Form 20-F and was at risk of imminent delisting from the Nasdaq Capital Market — a risk that materialized within approximately nine months of the representations, when Above Food was delisted on June 1, 2026 for precisely those filing failures. Above Food also failed to disclose that it was not at a position to complete the Reverse Merger by May 31, 2026.

92. Above Food also made false representation, through Jason Zhao, that the asset roll-in had "already happened" as of December 24, 2025, and omitted material fact that Palm Global had received and retained the substantial majority of Aqua1's investment proceeds.

93. Above Food made these misrepresentations and omissions knowingly, or with reckless disregard for their truth or falsity, given that Above Food, as the reporting company, necessarily possessed superior knowledge of its relationship with Palm Global, the status of its own financial statement preparation, audit process, and Form 20-F filing timeline as of September 3, 2025.

94. The misrepresented and omitted facts were material because a reasonable investor in Aqua1's position would have considered Above Food's ability to remain current in its SEC reporting obligations and maintain its Nasdaq listing to be significant in deciding whether to invest $5,000,000 in a note convertible into Above Food's common shares, particularly where continued Nasdaq listing and 1934 Act reporting compliance were expressly made covenants of, and Events of Default under, the Note itself. Aqua1 would also consider the fact that Palm Global received 85% of its fund material as it loaned the fund to Above Food, not Palm Global. Lastly, the completion of the Palm Global Reverse Merger is a key inducement of Aqua1's investment.

95. Aqua1 reasonably relied on Above Food's representations and warranties in the Purchase Agreement in deciding to purchase the Note and fund the $5,000,000 Purchase Price, and Aqua1's reliance was reasonable given that, under Section 2(d) of the Purchase Agreement, Above Food had not disclosed any material nonpublic information to Aqua1 and Aqua1 was entitled to rely on Above Food's representations and warranties notwithstanding any due diligence conducted by Aqua1.

96. As a direct and proximate result of Above Food's material misrepresentations and omissions, Aqua1 suffered damages in an amount to be proven at trial, including the loss of some or all of its $5,000,000 investment and the diminution in value of its rights under the Note, in that Above Food's common shares are no longer listed on a national securities exchange, materially impairing the value and liquidity of the conversion rights for which Aqua1 bargained, and Above Food has failed and refused to repay the Note in cash.

## THIRD CAUSE OF ACTION

**(Violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, and, in the Alternative, Section 20(a) Control Person Liability,**

**Against Defendant Zhao)**

97. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

98. Zhao, in his capacity as Above Food's Chief Financial Officer and as Above Food's principal point of contact with Aqua1, made, and/or was the source of and primarily responsible for, the materially false and misleading statements and omissions described in Section H above, including the false representation that the asset roll-in had “already happened” as of December 24, 2025, and the omission of the fact that Palm Global had received and retained the substantial majority of Aqua1's investment proceeds.

99. These statements and omissions were made in connection with the purchase and continued holding of the Note, a security, in that Aqua1 relied on Zhao's ongoing representations regarding the status of the asset roll-in, the use of Aqua1's investment proceeds, and the status of the Palm Global Reverse Merger — matters central to the value of Aqua1's investment — in continuing to hold the Note, in refraining from earlier declaring an Event of Default, and in considering whether to fund the additional tranches contemplated by the note program.

100. Zhao's statements and omissions were material for the reasons set forth in Section H above, in that a reasonable investor would have considered it significant that only a small fraction of its investment was retained by the issuer, that the represented asset roll-in had, in fact, not been documented as complete, and that Palm Global was directing Above Food to withhold information from Aqua1.

101. Zhao acted knowingly, or with reckless disregard for the truth or falsity of his statements and omissions, given his position and superior knowledge as described above.

102. Aqua1 reasonably relied on Zhao's representations and omissions, including his December 24, 2025 representation and his August 24, 2025 due diligence materials, and was damaged as a direct and proximate result, in an amount to be proven at trial.

103. In the alternative, and to the extent Zhao is not found to be a primary violator of Section 10(b) and Rule 10b-5, Zhao is liable as a control person of Above Food under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), in that Zhao, by virtue of his office as Chief

Financial Officer and his operational control over Above Food's finance function and investor communications, was a person who directly or indirectly controlled Above Food within the meaning of Section 20(a), and who culpably participated in the violations of Section 10(b) and Rule 10b-5 by Above Food described in the Second Cause of Action above.

**FOURTH CAUSE OF ACTION**

**(Violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, and, in the Alternative, Section 20(a) Control Person Liability, Against Defendant Kambeitz)**

104. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

105. Kambeitz, in his capacity as Above Food's Chief Executive Officer, knowingly or recklessly permitted, and/or culpably participated in, the materially false and misleading statements and omissions described in Sections E, H, and J above, including Above Food's representations regarding its SEC reporting compliance and solvency, and the omission of the fact that Palm Global had received and retained the substantial majority of Aqua1's investment proceeds.

106. These statements and omissions were made in connection with the purchase and continued holding of the Note, a security, in that Aqua1 relied on Above Food's ongoing representations, made under Kambeitz's ultimate authority and oversight as Chief Executive Officer, regarding its financial condition, reporting compliance, and use of Aqua1's investment proceeds, in deciding to fund and continue to hold the Note.

107. These statements and omissions were material for the reasons set forth in Sections E and H above.

108. Kambeitz acted knowingly, or with reckless disregard for the truth or falsity of Above Food's statements and omissions, given his position and superior knowledge as Above Food's Chief Executive Officer, as described in Section J above.

109. Aqua1 reasonably relied on Above Food's representations and omissions, made under Kambeitz's authority and control, and was damaged as a direct and proximate result, in an amount to be proven at trial.

110. In the alternative, and to the extent Kambeitz is not found to be a primary violator of Section 10(b) and Rule 10b-5, Kambeitz is liable as a control person of Above Food under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), in that Kambeitz, by virtue of his office as Chief Executive Officer and his ultimate authority and control over Above Food's management, finance function, and investor communications, was a person who directly or indirectly controlled Above Food within the meaning of Section 20(a), and who culpably participated in the violations of Section 10(b) and Rule 10b-5 by Above Food described in the Second Cause of Action above.

## FIFTH CAUSE OF ACTION

**(Violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, and, in the Alternative, Section 20(a) Control Person Liability, Against Defendant Kafesha)**

111. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

112. Kafesha, in his capacity as President of Palm Global, knowingly or recklessly authorized, directed, or acquiesced in Palm Global's receipt and retention of the substantial majority of Aqua1's investment proceeds and in Palm Global's direction that information regarding that diversion, and regarding the status of the Reverse Merger, be withheld from Aqua1, as described in Sections I and J above.

113. These omissions were made in connection with the purchase and continued holding of the Note, a security, in that Aqua1 relied on the absence of any disclosure of Palm Global's receipt of its investment proceeds, and on the anticipated completion of the Reverse Merger, in continuing to hold the Note and refraining from earlier declaring an Event of Default.

114. These omissions were material for the reasons set forth in Sections H and I above, including that a reasonable investor would have considered it significant that the substantial majority of its investment was diverted to Palm Global without its knowledge or consent.

115. Kafesha acted knowingly, or with reckless disregard for the truth or falsity of Palm Global's omissions, given his position and authority as President of Palm Global, as described in Section J above.

116. Aqua1 reasonably relied on the absence of disclosure regarding Palm Global's receipt and retention of its investment proceeds, and was damaged as a direct and proximate result, in an amount to be proven at trial.

117. In the alternative, and to the extent Kafesha is not found to be a primary violator of Section 10(b) and Rule 10b-5, Kafesha is liable as a control person of Palm Global under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), in that Kafesha, by virtue of his office as President and his authority and control over Palm Global's business and decision-making, was a person who directly or indirectly controlled Palm Global within the meaning of Section 20(a), and who culpably participated in the violations of Section 10(b) and Rule 10b-5 by Palm Global described herein.

## SIXTH CAUSE OF ACTION

**(Violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, and, in the Alternative, Section 20(a) Control Person Liability, Against Defendant Mercer)**

118. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

119. Mercer, as a founding shareholder and director of Palm Global and Palm Global's principal point of contact with Above Food, directed, or participated in the decision to direct, that Above Food and Palm Global withhold from Aqua1 material information regarding the use of Aqua1's investment proceeds and the status of the Reverse Merger, as described in Sections I and J above, including by causing Palm Global to function, in Zhao's words, as "the gatekeeper for information" flowing to Aqua1.

120. These omissions were made in connection with the purchase and continued holding of the Note, a security, in that Aqua1 relied on the absence of disclosure of the matters Mercer directed be withheld in continuing to hold the Note and in refraining from earlier declaring an Event of Default and from earlier exercising its contractual remedies.

121. These omissions were material for the reasons set forth in Sections H and I above.

122. Mercer acted knowingly, or with reckless disregard for the truth or falsity of the omissions he directed or controlled, given his position as a director and founding shareholder of Palm Global and his role as Palm Global's principal point of contact with Above Food, as described in Section J above.

123. Aqua1 reasonably relied on the absence of disclosure of the information Mercer directed be withheld, and was damaged as a direct and proximate result, in an amount to be proven at trial.

124. In the alternative, and to the extent Mercer is not found to be a primary violator of Section 10(b) and Rule 10b-5, Mercer is liable as a control person of Palm Global under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), in that Mercer, by virtue of his position as a director and founding shareholder of Palm Global and his role as Palm Global's principal point of contact with Above Food and de facto information gatekeeper, was a person who directly or indirectly controlled Palm Global within the meaning of Section 20(a), and who culpably participated in the violations of Section 10(b) and Rule 10b-5 by Palm Global described herein.

**SEVENTH CAUSE OF ACTION**

**(Common Law Fraud, Against Above Food, Zhao, Kambeitz, Palm Global, Kafesha, and Mercer)**

125. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

126. Above Food and Zhao made false representations of material fact to Aqua1, including but not limited to the representations described in Sections E and H above. Above Food, Zhao, Kambeitz, Palm Global, Kafesha, and Mercer each knowingly omitted material facts

that they had a duty to disclose, including the timing of the Reverse Merger and the true use and disposition of Aqua1's investment proceeds, which Above Food was contractually obligated to report to Aqua1 under Section 2(c) of the Side Letter.

127. Above Food and Zhao made these representations, and Kambeitz knowingly or recklessly permitted and culpably participated in them, and Palm Global, Kafesha, and Mercer made or participated in the omissions described herein, with knowledge of their falsity or with reckless disregard for the truth, and with the intent to induce Aqua1 to fund and continue to hold the Note without exercising its remedies.

128. Palm Global, at the direction of, and with the knowing participation of, Kafesha and Mercer, knowingly participated in, and benefited from, the scheme to misrepresent and conceal the use of Aqua1's investment proceeds. Palm Global received and retained the substantial majority of those proceeds notwithstanding that they were advanced by Aqua1 to Above Food, not to Palm Global, and notwithstanding representations that induced Aqua1 to invest in Above Food's business. Palm Global, Kafesha, and Mercer further directed that information regarding this diversion, and regarding the status of the Palm Global Reverse Merger, be withheld from Aqua1, as described in Sections I and J above — even as Palm Global remained bound, as Guarantor, to ensure full and punctual payment of Above Food's obligations to Aqua1.

129. Aqua1 justifiably relied on Defendants' representations and omissions in funding and continuing to hold the Note and in refraining from earlier exercising its contractual remedies.

130. As a direct and proximate result of Defendants' fraud, Aqua1 has suffered damages in an amount to be proven at trial, including the loss of some or all of its $5,000,000 investment. Because Defendants' conduct was willful, wanton, and in reckless disregard of Aqua1's rights, Aqua1 is further entitled to an award of punitive damages against Above Food, Zhao, Kambeitz, Palm Global, Kafesha, and Mercer, jointly and severally, in an amount sufficient to punish and deter such conduct.

## EIGHTH CAUSE OF ACTION

**(Breach of Guaranty, Against Palm Global)**

131. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

132. The Guaranty is a valid and binding contract between Aqua1 and Palm Global, governed by the laws of the State of Nevada pursuant to Section 12, and is supported by adequate consideration, including the substantial direct and indirect benefits that Palm Global expressly acknowledged it would receive from the Purchase Agreement and the Notes, and the extensions of credit that Aqua1 made to Above Food in reliance on the Guaranty.

133. Aqua1 has performed all of its obligations under the Purchase Agreement and the Notes, including funding the full $5,000,000 Purchase Price, and has satisfied all conditions to its right to enforce the Guaranty in accordance with its terms.

134. As alleged in the First Cause of Action above, Above Food is in default of its obligations under the Note, including its failure to pay the outstanding principal, accrued interest, and Default Amount due and owing as of the Note's Maturity Date of May 31, 2026, and continuing to the present.

135. Under Section 2 of the Guaranty, Above Food's default in the payment of the obligations rendered Palm Global's guaranty obligations with respect to those obligations immediately due and payable upon demand by Aqua1, without any requirement of notice, all of which Palm Global expressly waived.

136. Aqua1 has demanded payment of the obligations from Above Food, including by letters dated June 5, 2026 and July 13, 2026, and Above Food has failed to pay. Aqua1 has also demanded payments of the obligations from Palm Global, including by letters dated June 5, 2026 and July 13, 2026. Palm Global has failed to pay, in breach of the Guaranty.

137. As a direct and proximate result of Palm Global's breach of the Guaranty, Aqua1 has been damaged in an amount to be proven at trial, but not less than $6,190,000, for which Palm Global is jointly and severally liable with Above Food, plus continuing default interest accruing until payment in full.

138. Pursuant to Section 3 of the Guaranty, Aqua1 is further entitled to recover from Palm Global, as principal obligor, its reasonable out-of-pocket costs and expenses, including attorneys' fees, incurred in enforcing the obligations and the Guaranty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Aqua1 Alternative Investment LP respectfully requests that this Court enter judgment in its favor and against Defendants Above Food Ingredients Inc., Jason Zhao, Lionel Kambeitz, Palm Global Technologies Limited, Muayad Kafesha, and Darren Mercer as follows:

(a) On the First Cause of Action, against Above Food, damages in an amount to be proven at trial, but not less than $6,190,000, plus default interest at 16% per annum continuing to accrue until payment in full, plus reasonable attorneys' fees and costs of collection pursuant to Article III and Section 4.5 of the Note;

(b) On the Second Cause of Action, against Above Food, compensatory damages in an amount to be proven at trial;

(c) On the Third Cause of Action, against Zhao, compensatory damages in an amount to be proven at trial;

(d) On the Fourth Cause of Action, against Kambeitz, compensatory damages in an amount to be proven at trial;

(e) On the Fifth Cause of Action, against Kafesha, compensatory damages in an amount to be proven at trial;

(f) On the Sixth Cause of Action, against Mercer, compensatory damages in an amount to be proven at trial;

(g) On the Seventh Cause of Action, against Above Food, Zhao, Kambeitz, Palm Global, Kafesha, and Mercer, jointly and severally, compensatory damages in an amount to be proven at trial, plus punitive damages;

(h) On the Eighth Cause of Action, against Palm Global, damages in an amount to be proven at trial, but not less than $6,190,000, jointly and severally with the damages awarded against Above Food on the First Cause of Action, plus continuing default interest, plus reasonable attorneys' fees and costs pursuant to Section 3 of the Guaranty;

(i) Pre-judgment and post-judgment interest at the maximum rate allowable by law;

(j) Reasonable attorneys' fees, expert fees, and costs of suit; and

(k) Such other and further relief as this Court deems just and proper.

Plaintiff notes that the Note contains an express, irrevocable waiver by Aqua1 and Above Food of any right to a jury trial with respect to any dispute arising under or in connection with the Note or the transactions contemplated thereby (Note § 4.6), and that the Guaranty contains a similar express, irrevocable waiver by Palm Global with respect to any dispute arising under or in connection with the Guaranty (Guaranty § 13). Consistent with those waivers, and in the interest of proceeding before a single factfinder, Plaintiff does not demand a trial by jury as to any of its claims in this Complaint, including its claims against Zhao, Kambeitz, Kafesha, and Mercer, and reserves all rights to seek relief in equity as set forth herein.

Dated: August 18s, 2026

/s/ Bing Zhang Ryan

Bing Zhang Ryan *(pro hac)*
Zhang Law Group
2950 Buskirk Avenue, Suite 300
Walnut Creek, CA 94597

*Attorneys for Plaintiff Aqua1 Alternative Investment LP*